**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | CIVIL ACTION |
| WHITEHALL MANOR, INC, | : | Case No. 5:26-CV-05390-CH |
| *Debtor*. | : | |

**APPELLANT LEHIGH VALLEY 1, LLC'S RESPONSE TO JOINT MOTION TO DISMISS APPEAL**

Appellant Lehigh Valley 1, LLC ("Lender") hereby opposes the Joint Motion to Dismiss Appeal (the "Motion," ECF 7) brought by Debtors Whitehall Manor, Inc. ("Whitehall Manor") and Saucon Valley Manor, Inc. ("Saucon Manor", and together, the "Manor Debtors"), and by Whitehall Trust (n/k/a Whitehall Trust for Senior Care) and Saucon Trust (together, the "Trusts").

## INTRODUCTION

It is the law in the Third Circuit that "orders in bankruptcy cases finally disposing of discrete disputes within the larger case may be immediately appealed." *In re Pro. Ins. Mgmt.*, 285 F.3d 268, 280–81 (3d Cir. 2002). Here, Lender properly appeals two orders where the Bankruptcy Court sought to "address" "[k]ey unresolved issues," after holding a two-day evidentiary hearing, and then making conclusive findings of fact and conclusions of law. Bankr. ECF 277 at 3 (Case No. 25-15245). This case is squarely within the

Third Circuit's "pragmatic" approach to bankruptcy finality, and the Lender's appeal should therefore be heard. *Pro. Ins.*, 285 F.3d at 279-80.

Specifically, Lender appeals two orders:

*First*, Lender appeals an order permitting the Manor Debtors and the Trusts to enter into insider transactions – Use & Occupancy Agreements – where Abraham Atiyeh, who controls all of the Manor Debtors and also the Trusts, decided upon the rent they will pay themselves going forward until at least the end of the Manor Debtors' bankruptcy cases. Nothing in the agreements or the order authorizing them suggests they were only approved on an interim basis or will be revisited. Bankr. ECF 248 (Case No. 25-15245).

*Second*, Lender appeals an order that concludes that Lender is not entitled to adequate protection payments, a type of decision which courts routinely conclude is final and appealable. Bankr. ECF 247 (Case No. 25-15245).

Both of these decisions were made after a two-day evidentiary hearing where the Bankruptcy Court adopted Mr. Atiyeh's "market" valuation of the properties, an issue which underlies both orders.

## FACTUAL BACKGROUND

Historically, Whitehall Manor leased property from Whitehall Trust to operate a personal care home on that property (the "Whitehall Lease").

Saucon Manor, likewise, leased property from Saucon Trust to operate a personal care home on that property (the "Saucon Lease"). The Whitehall Lease required, in its most recently operative version (after this Court found a subsequent amendment by Mr. Atiyeh to be "NULL, VOID and OF NO LEGAL EFFECT," ECF 164 (Case No. 24-cv-02627)), a monthly rent of $139,000 to be paid to Whitehall Trust. Similarly, the "Saucon Lease" required a monthly rent of $142,118 in its most recently operative version to be paid to Saucon Trust. *See* Bankr. ECF 56 at 7 (Case No. 25-15245). These specific rents were mandated by the terms of the Trusts' mortgages on the properties.

In 2021, the Manor Debtors stopped paying rents to the Trusts, causing the Trusts to be unable to service their mortgages. After Lender initiated foreclosure proceedings against the Trusts, the Manor Debtors and the Trusts filed bankruptcy petitions.[1] The Manor Debtors continue to operate personal care homes on the Trust properties as debtors-in-possession, even though the Bankruptcy Court ruled that the Whitehall Lease and the Saucon Lease had expired by their own terms. Bankr. ECF 124 (Case No. 25-15245).

[1] On March 19, 2026, the Bankruptcy Court dismissed the chapter 11 cases filed by the Trusts, although it subsequently entered an order staying the effectiveness of the dismissal order pending appeal. ECF 264, 274, *In re Whitehall Trust*, Case No. 25-15241 (PMM) (Bankr. E.D. Pa. 2025)

Early in the bankruptcy case, the court ordered that the Manor Debtors make adequate protection payments to Lender. Adequate protection payments are for the purpose of protecting a secured creditor from diminutions in value of its interest in its collateral resulting from that property's use during the bankruptcy case. Initially, the court ordered each of the Manor Debtors to pay $35,000 per month to Lender as adequate protection of its interests. *See* Bankr. ECF 32 at 3 (Case No. 25-15245). Later, the court ordered Whitehall Manor and Saucon Manor to make additional monthly payments of $69,844.85 and $69,578.58, respectively, in adequate protection to Lender, representing contractual debt service owed to Lender, in addition to its prior monthly payments of $35,000. *See* Bankr. ECF 168 at 7 (Case No. 25-15245).

On June 9, 2026, in yet another effort by Mr. Atiyeh to significantly reduce the rent the Manor Debtors were to pay to the Trusts, Manor Debtors and the Trusts brought a motion to approve Use and Occupancy Agreements ("U&O Agreements") between the respective pairs of Manor Debtors and Trusts. Bankr. ECF 182, 215 (Case No. 25-15245). Again, the Manor Debtors continue to use and occupy the Trust properties after the leases had expired on their own terms. The motion referenced appraisals of the properties commissioned by Mr. Atiyeh which concluded that the fair market monthly

rental value is $27,625 for Whitehall and $34,937.50 for Saucon. *Id.* The U&O Agreements then incorporate these figures, which represent an 80.1% and 75.4% respective decrease on the monthly rents owed under the pre-petition leases. The U&O Agreements have indefinite terms of duration but are terminable on 30-days' notice. Bankr. ECF 182, 216 (Case No. 25-15245). Lender, for its part, opposed entering the proposed U&O Agreements. Lender asserted that the pre-petition rents should control, and alternatively offered its own appraisals of the properties, which found a fair market monthly rental value of $88,333 for Whitehall Manor and $96,667 for Saucon Manor (which is more in line with the prior lease terms). Bankr. ECF 215, 221 (Case No. 25-15245).

Shortly thereafter, the Manor Debtors and the Trusts brought another motion to modify the adequate protection payments that they owe to Lenders. The Manor Debtors' and the Trusts' proposal was to then modify the Bankruptcy Court's prior adequate protection payments from over $69,000 each down to $41,953.58 for Whitehall Manor and $34,907.35 for Saucon Manor. The combination of these proposed reduced payments with the Manor Debtors and the Trust's proposed fair market monthly rental payments under the U&O Agreements would equal the monthly contractual debt service that the Trusts owed to Lender. *See* Bankr. ECF 206 at 3 (Case

No. 25-15245). Lender, again, opposed that motion. Bankr. ECF 219 (Case No. 25-15245).

The court held two days of hearings for these motions on July 22 and 23, 2026. Each side called their appraiser along with various other witnesses concerning the Manor Debtors' budgets, the condition of the properties, and the need for adequate protection.

On July 27, 2026, the Bankruptcy Court entered orders granting both of the Manor Debtors' and the Trusts' motions, allowing the Manor Debtors and the Trusts to enter into the U&O Agreements (the "U&O Order," Bankr. ECF 248 (Case No. 25-15245)), and decreasing the Manor Debtors' and the Trusts' adequate protection payments (the "AP Order," Bankr. ECF 247 (Case No. 25-15245)). On August 26, 2026, the Bankruptcy Court issued an opinion explaining its orders. Bankr. ECF 277 (Case No. 25-15245). Lender timely filed this appeal of the U&O Order and the AP Order.

**LEGAL STANDARD**

Appellate jurisdiction over bankruptcy orders is governed by 28 U.S.C. § 158(a). A district court may "hear appeals … from final judgments, orders, and decrees … of bankruptcy judges entered in cases and proceedings …" 28 U.S.C. § 158(a)(1). The Third Circuit Court of Appeal expressly follows a "pragmatic" approach to finality in the context of bankruptcy orders, which

provides that "orders in bankruptcy cases finally disposing of discrete disputes within the larger case may be immediately appealed." *In re Pro. Ins. Mgmt.*, 285 F.3d 268, 280–81 (3d Cir. 2002); *see also In re Yellow Corp.*, 2026 WL 1855837, at *4 (D. Del. June 29, 2026) ("By providing for appeals from final decisions in bankruptcy 'proceedings,' as distinguished from bankruptcy 'cases,' Congress made 'orders in bankruptcy cases … immediately appeal[able] if they finally dispose of discrete disputes within the larger [bankruptcy] case.'" (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)).

Such an order must "fully and finally resolved a discrete set of issues, leaving no related issues for later determination." *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990). However, even in the context of determining whether additional proceedings are necessary, the court should take a pragmatic approach and focus on the "function[]" of an Order rather than its form. *See In re Odyssey Contracting Corp.*, 944 F.3d 483, 487 (3d Cir. 2019) (holding an order requiring parties to dismiss an adversary proceeding in accordance with a stipulation and submit a status report did not render the order non-final merely because the court may need to enter an additional order dismissing the proceeding). More recently, the Third Circuit has observed that such an order "generally 'initiates a discrete procedural sequence,

including notice and a hearing'; requires application of a 'statutory standard'; and does 'not occur as part of the adversary claims-adjudication process.'" *In re Energy Future Holdings Corp.*, 949 F.3d 806, 817 (3d Cir. 2020) (quoting *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 38 (2020)).

## ARGUMENT

### I. The U&O Order is a Final Order

The U&O Order is a final order as it allows the Manor Debtors and the Trusts to enter into the U&O Agreements. On its face, the U&O Order "fully and finally resolved a discrete set of issues," concerning whether the U&O Agreements are proper uses of estate property, and "leav[e] no related issues for later determination." *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990). Nothing within the U&O Order or the accompanying opinion suggests that the Bankruptcy Court intends to revisit whether it will permit the Manor Debtors to continue to use and occupy the Trust properties pursuant to the U&O Agreements. Further, nowhere in the U&O Order or in the opinion does it state that the Order was entered on an interim basis. Further, the U&O Agreements have indefinite terms of duration and do not contemplate any further court intervention for their continued operation.

Moreover, the U&O Order squarely satisfies the factors demonstrating that an order is final and appealable identified in *Energy Future Holdings*.

*First*, the approval of the U&O Agreements was a "discrete procedural sequence," noticed by the Manor Debtors and the Trusts and briefed by the parties, ultimately with an evidentiary hearing being held in July 2026. *Energy Future Holdings.*, 949 F.3d at 817; *see* Bankr. ECF 182, 215, 216, 221 (Case No. 25-15245).

*Second*, the Bankruptcy Court considered whether the U&O Agreements were proper uses of estate assets using the heightened standard of § 363(b)(1). The Bankruptcy Court analyzed factors specific to this standard, including the adequacy of the consideration, the business purpose of the agreements, notice, and good faith. Bankr. ECF 277 at 9-22 (Case No. 25-15245).

*Third*, the approval of the U&O Agreements, which govern how the properties will be used and what rent will be owed going forward indefinitely, has nothing to do with the adversary claims-adjudication process.

The Manor Debtors and the Trusts tacitly acknowledge that the U&O Order is clearly final. They devote barely more than a paragraph in their brief to discussing the U&O Order, and only assert that the U&O Order is part of "the same integrated arrangement" as the AP Order. ECF 7 at 9. They offer no argument why the U&O Order is independently non-final, simply because no non-frivolous argument exists for that position.

## II. The AP Order is also a Final Order

Likewise, the AP Order is also a final order. Nothing within the AP Order suggests that the court will revisit this Order. *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990). The Order itself is not designated as an interim order. It was entered after several rounds of prior proceedings relating to adequate protection, but this order was entered only after a full evidentiary hearing. Also, the Bankruptcy Court made express findings of fact and conclusions of law, and did not indicate that it planned to revisit those findings.[2] Bankr. ECF 277 at 25-26 (Case No. 25-15245).

Likewise, the AP Order satisfies each of the *Energy Future Holdings* factors, further demonstrating that it is a final order.

*First*, the AP Order was a "discrete procedural sequence," with distinct notice, briefing, and a July 2026 evidentiary hearing in conjunction with the U&O Order. *Energy Future Holdings.*, 949 F.3d at 817; *see* Bankr. ECF 206, 219 (Case No. 25-15245).

*Second*, the Bankruptcy Court applied the statutory standard for adequate protection pursuant to § 362(d)(1) and § 363(e). Bankr. ECF 277 at 22-27 (Case No. 25-15245).

[2] Lender reserves all rights to assert that adequate protection payments are available through alternative theories.

*Third*, the AP Order, which governs what the Manor Debtors must pay to Lender to protect the value of its interests from decreasing during the pendency of the bankruptcy, has nothing to do with the adversary claims-adjudication process. Instead, it has everything to do with protecting the rights of the Manor Debtors' and the Trusts' principal secured creditor, without which, Lender runs the serious risk of losing the ability to recover the value of its interest in the collateral. Accordingly, courts have routinely found that orders concerning adequate protection are final, appealable orders. *See In re AMR Corp.*, 490 B.R. 470, 476 (S.D.N.Y. 2013) (holding the "weight of the authority" is that an order denying a "motion for adequate protection pursuant to § 363(e) is considered a final order that is appealable"); *In re O'Connor*, 808 F.2d 1393, 1395 n.1 (10th Cir. 1987) (appeal of conclusion that creditors were adequately protected was final and appealable); *Zink v. Vanmiddlesworth*, 300 B.R. 394, 396 (N.D.N.Y. 2003) (holding an order denying a motion for adequate protection is final and appealable); *see also Banc of America Commercial Financial Corp. v. CGE Shattuck, LLC*, 255 B.R. 334, 336 (1st Cir. BAP 2000) (holding denying relief from the automatic stay on condition that the debtor make adequate protection payments is final and appealable); *In re Kamai*, 316 B.R. 544, 547 (B.A.P. 9th Cir. 2004) (same).

Debtor cherry picks language to suggest that the opinion reviewing the reasoning behind the U&O Order and the AP Order implies that the AP Order was intended to be interim. The Manor Debtors and the Trusts quote language that the bankruptcy is "in flux" and that adequate protection is a "[k]ey unresolved issue." ECF 7 at 7-8. But the Manor Debtors and the Trusts omit a following sentence, which states that the opinion is "aimed at addressing" adequate protection and other issues, Bankr. ECF 277 at 3 (Case No. 25-15245). Moreover, discussion of adequate protection in prior or future interim orders does not transform the AP Order into an interim order. In fact, other cases have concluded that an adequate protection order's reference to § 363(e)'s language that adequate protection may be reexamined "at any time" or the mere possibility of revisiting adequate protection does not make an order non-final when it otherwise disposes of the adequate protection issue. *See AMR Corp.*, 490 B.R. at 476 (holding invitation from the court to "come back when there is a change in circumstances" did not render an adequate protection order non-final). The finality of an order must be examined pragmatically. *In re Pro. Ins. Mgmt.*, 285 F.3d at 280. Here, the AP Order was entered after a lengthy evidentiary hearing, and after the court made findings of fact and conclusions of law that appear to finally determine

the adequate protection required – absent a material change of circumstances.

Moreover, as the Manor Debtors and the Trusts acknowledge, the issue of adequate protection is intertwined with issues underlying the U&O Order, because both fundamentally turn on the fair market rental value of the properties. The valuations of the properties were critical to the U&O Order because, in order to meet the heightened scrutiny for an insider transaction under § 363(b)(1), the Bankruptcy Court evaluated the adequacy of the consideration – the rents – relative to the value of the properties. *See* Bankr. ECF 277 at 11-18 (Case No. 25-15245). The valuations were also critical to the analysis of the AP Order for two reasons.

*First*, Lender asserted that it should receive adequate protection for interest in rents paid by the Manor Debtors to the Trust, which would vary depending on the amount of rent owed, although the Bankruptcy Court rejected this assertion. *See id.* at 25.

*Second*, any diminution in the value of the properties would provide a compelling basis for adequate protection. *See id.* at 26.

Any appeal of the issues in the U&O Order will necessarily impact the determination of adequate protection, *i.e.*, the value of the Lender's interest in the rent as collateral and what is the proper amount to ensure that

Lender's interests in rents and the properties are protected against losing value. As the Bankruptcy Court observed, both the U&O Order and the AP Order turn on "what are the Facilities worth?" Bankr. ECF 277 at 3 (Case No. 25-15245). Because the Bankruptcy Court appears to have adopted Mr. Atiyeh's valuations over Lender's, *id.* at 11-18, these two orders raise the same issues and are functionally final. Regardless, because the U&O Order is clearly final, this Court on appeal will review all of these issues no matter whether the AP Order is determined to be final.

## CONCLUSION

For the foregoing reasons, Lender respectfully requests that the Court deny the Joint Motion to Dismiss this Appeal.

Respectfully Submitted,

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: September 25, 2026

By: */s/ Matthew A. Hamermesh*
Matthew A. Hamermesh
Sara E. Smith
mhamermesh@hangley.com
ssmith@hangley.com
1735 Market Street, 26th Floor
Philadelphia, PA 19103
(215) 568-6200

and

BERGER LAW GROUP, P.C.
Phillip D. Berger
919 Conestoga Road, Building 3, Suite 114

Bryn Mawr, PA 19010
(610) 668-0800
Berger@BergerLawPC.com

*Attorneys for Secured Creditor Lehigh Valley 1, LLC*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 2,826 words, exclusive of the caption, title, and signature block, in compliance with the type-volume requirements of Federal Rule of Bankruptcy Procedure 8013(f)(3)(A).

*/s/ Matthew A. Hamermesh*
Matthew A. Hamermesh

**CERTIFICATE OF SERVICE**

I, Matthew A. Hamermesh, hereby certify that on September 25, 2026, I caused the foregoing Appellant Lehigh Valley 1, LLC's Response to Joint Motion to Dismiss Appeal to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Matthew A. Hamermesh*
Matthew A. Hamermesh